UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------X
AXA CORPORATE SOLUTIONS
INSURANCE COMPANY f/k/a
AXA GLOBAL RISKS, U.S. INSURANCE
COMPANY,

              Plaintiff,             03 Civ. 8493 (DAB)
                                     **MEMORANDUM & ORDER**

     -against-

LUMBERMENS MUTUAL CASUALTY CO.,

              Defendant.
------------------------------------X
DEBORAH A. BATTS, United States District Judge.

Plaintiff AXA Corporate Solutions Insurance Company ("AXA")
has filed the above-captioned case against Defendant Lumbermens
Mutual Casualty Co. ("Lumbermens") for breach of two co-sureties.
Defendant Lumbermens has moved to dismiss the Amended Complaint
for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6)
and for failure to join a necessary party, First Indemnity of
America Insurance Company ("FIA"), pursuant to Fed. R. Civ. P.
12(b)(7) and 19.  AXA opposes the Motion to Dismiss on the
grounds that the filing of an Amended Complaint has mooted the
Motion to Dismiss.  Alternatively, AXA argues that the Amended
Complaint shows that AXA, not FIA, is a party to the co-sureties,
and therefore FIA is not a necessary party.

For the reasons that follow, Defendant Lumbermens' Motion to
Dismiss is GRANTED.

## I.  BACKGROUND

The following facts are taken from the Amended Complaint and documents incorporated in the Amended Complaint by reference, and are accepted as true by the Court for the purposes of this Motion to Dismiss.

Plaintiff AXA is licensed to conduct business as an insurer and surety in the State of New York, with its place of business in New York, New York.  Defendant Lumbermens is authorized to conduct the business of insurance in the State of New York, with its principal place of business in Long Grove, Illinois.

### A.  Valenzuela Bonds

On January 7, 1998, AXA appointed Eamonn T. Long, as well as Patrick J. Lynch, Michael J. Tully, and Philip S. Tobey as its true and lawful Attorneys-in-Fact "to make, execute, sign, acknowledge, affix the Company Seal to, deliver and all surety bonds, undertakings, recognizances, and other contracts of indemnity and writings obligatory in the nature of a bond, for and on behalf of [AXA] and as an act and deed of [AXA]."[1] (Alongi Aff. at Ex. A.)

On or about March 31, 1999, non-party Valenzuela

_____

[1] This grant was apparently ratified by the Corporation on April 27, 1999.

2

Engineering, Inc. ("Valenzuela") entered into a contract with the United States of America for certain construction work known as N/B Renovate Aircraft Maintenance Facility, Edwards AFB, CA, Contract No. DACA05-99-C-0032 ("Valenzuela Project"). In accordance with the requirements of the contract and 40 U.S.C. § 270-a(a) ("the Miller Act"), on or about April 27, 1999, AXA, as surety, and Valenzuela, executed a Performance Bond and a Payment Bond in favor of the United States of America, as obligee, in connection with the Valenzuela Project, each bond "in the penal sum" of $6,978,000 and together known as Bond No. L04576 ("the Valenzuela Bonds"). (Am. Compl. ¶¶ 6-7.) The AXA representative listed on the Valenzuela Bonds is Eamonn T. Long as Attorney-in-Fact.

On May 9, 1999, FIA and Lumbermens entered into a written agreement, designated as Co-Surety #142. Co-Surety #142 is purportedly signed by a representative of FIA and a representative of Lumbermens; the names are not discernible from the signatures. (Id. at Ex. C.) By this agreement, Lumbermens agreed to share proportionately in all losses, including loss adjustment expenses incurred, and agreed to be liable for losses equal to the proportionate share that $2,000,000 bears to the penalty of the bond, or 28.66%. The Principal/Contractor on Co-Surety #142 is listed as Valenzuela Engineering, Inc. and the

3

Obligee as the Department of the Army.  N/B Renovate Aircraft Maintenance Facility is listed as the Job Description.  The name AXA does not appear on Co-Surety #142.  (Id.)  AXA claims, however, that in accordance with custom and usage between the parties and as is common in the industry, FIA entered into Co-Surety #142 as agent and attorney-in-fact for AXA.[2]  (Am. Compl. ¶ 10.)

In connection with the Valenzuela Bonds, AXA allegedly sustained net losses, including loss adjustment expenses, in the amount of $356,409.25.  AXA claims that according to Co-Surety #142, it is entitled to payment from Lumbermens in the amount of $102,146.87 and that Lumbermens, without justification and in material breach of Co-Surety #142, has refused to remit payment.

B.  Eaton Bonds

On or about May 10, 1999, non-party Eaton Electric, Inc. ("Eaton") entered into a contract with Dormitory Authority of the State of New York ("DASNY"), for the performance of construction work known as Brooklyn College Library Rehabilitation and Expansion Contract L-4 ("the Eaton Project").  In compliance with the contract and New York State Finance Law § 137, on or about

---

[2] This despite the fact that FIA is not an entity listed on the Power of Attorney document.

4

May 27, 1999, AXA, as surety, and Eaton, as principal, executed a Performance Bond and a Payment Bond in favor of DASNY in connection with the Eaton Project, each bond in the penal sum of $8,933,000 and known as Bond No. L04616 ("the Eaton Bonds"). (Id. ¶¶ 8-9.)  The AXA representative listed on the Eaton Bonds is Patrick J. Lynch as Attorney-in-Fact.

On July 28, 1999, FIA and Lumbermens entered into a written agreement, designated as Co-Surety #146.  It is signed by a representative of Lumbermens but is not signed by a representative of FIA.  (Alongi Aff. at Ex. E.)  By this agreement, Lumbermens agreed to share proportionately in all losses, including loss adjustment expenses incurred, and agreed to be liable for losses equal to the proportionate share that $3,133,000 bears to the penalty of the bond, or 35.07%. Lumbermens assigned its Bond No. LM-0241585 to Co-Surety #146. (Am. Compl. ¶ 15.)  The Principal/Contractor on Co-Surety #146 is listed as Eaton Electric, Inc. and the Obligee as the Dormitory Authority - State of New York.  Brooklyn College Library Rehabilitation and Expansion is listed as the Job Description. The name AXA does not appear on Co-Surety #146.  (Alongi Aff. at Ex. E.)  AXA claims, however, that in accordance with custom and usage between the parties and as is common in the industry, FIA entered into Co-Surety #146 as agency and attorney-in-fact for

AXA.  (Am. Compl. ¶ 10.)

In connection with the Eaton Bonds, AXA allegedly sustained and paid net losses, including loss adjustment expenses, in the amount of $9,298,770.22.  According to AXA, by the terms of Co-Surety #146, AXA is entitled to payment from Lumbermens in the proportionate share of 35.07%, or $3,261,456.76.  Lumbermens has failed and/or refused to pay AXA for its proportionate share of liability under Co-Surety #146 without justification and has therefore materially breached its agreement with AXA.  (Id. ¶¶ 19-21.)

AXA has brought four causes of action against Lumbermens for Co-Surety #142 and Co-Surety #146 (collectively "Co-Sureties"), alleging breach of contract and breach of indemnity.  AXA demands judgment against Lumbermens in the total amount of $6,727,207.26, for costs and disbursements of this action and for other and further relief as the Court deems just and proper.

Defendant Lumbermens filed its Motion to Dismiss on December 19, 2003.  AXA filed an Opposing Memorandum on January 20, 2004 and an Amended Complaint on January 21, 2004.[3]

---

[3] Lumbermens did not file a new Motion to Dismiss in response to the Amended Complaint and instead filed its Reply, arguing that Lumbermens' Motion to Dismiss the initial Complaint is not obviated by the new pleading.

A defendant is not required to file a new Motion to Dismiss

## II. DISCUSSION

Lumbermens moves to dismiss the breach of contract and indemnity claims for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6) and for failure to join a necessary party pursuant to Fed. R. Civ. 12(b)(7) and 19.  Lumbermens argues that the Amended Complaint fails to cure the deficiency in the initial Complaint because the documentary evidence shows that FIA, not AXA, was a signatory to the Co-Sureties.  Defendant argues that, as AXA is not an intended beneficiary of either Co-Surety #142 or Co-Surety #146, it lacks standing to bring this action against Lumbermens.  If the Court finds that AXA has standing, Lumbermens argues that all causes of action must be dismissed because Lumbermens has failed to join FIA, who, as a signatory to the Co-Sureties, is a necessary party within the meaning of Fed. R. Civ.

---

simply because an amended pleading was introduced while its Motion was pending.  Accordingly, the Court evaluates the sufficiency of the pleadings on the Motion to Dismiss filed in response to the initial Complaint.  <u>See</u> 6 Wright, Miller & Kane, <u>Federal Practice and Procedure</u> § 1476 (2d ed. 1990) ("[D]efendants should not be required to file a new motion to dismiss simply because an amended pleading was introduced while their motion was pending."); <u>see also</u> <u>Tomney v. International Center for the Disabled</u>, No. 02 Civ. 2461, 2003 WL 1990532, at *1 (S.D.N.Y. Apr. 29, 2003); <u>Murray-Dahnir v. Loews Corp.</u>, No. 99 Civ. 9057, 1999 WL 639699, at *1 (S.D.N.Y. Aug. 23, 1999); <u>Sterling Interiors Group, Inc. v. Haworth, Inc.</u>, No. 94 Civ. 9216, 1996 WL 426379, at *1 (S.D.N.Y. July 30, 1996).

P. 19.[4]

AXA contends that its Amended Complaint moots the Motion to
Dismiss. In the alternative, AXA argues that the Motion to
Dismiss must be denied because it clearly alleges that FIA was
merely acting as agent and attorney-in-fact for AXA with regards
to both Co-Surety #142 and #146.

In response, Lumbermens states that the written instruments
contradict AXA's new allegation in the Amended Complaint
regarding FIA's alleged agency relationship with AXA, and that
the allegation is inadmissible under the parol evidence rule.
Hence, AXA still lacks standing to bring breach of contract and

---

[4] Rule 19 provides in pertinent part that:

A person who is subject to service of process
and whose joinder will not deprive the court of
jurisdiction over the subject matter of the
action shall be joined as a party in the action
if (1) in the person's absence complete relief
cannot be accorded among those already parties,
or (2) the person claims an interest relating to
the subject of the action and is so situated that
the disposition of the action in the person's
absence may (i) as a practical matter impair or
impede the person's ability to protect that
interest, or (ii) leave any of the persons already
parties subject to a substantial risk of incurring
double, multiple, or otherwise inconsistent
obligations by reason of the claimed interest.
If the person has not been so joined, the court
shall order that the person be made a party.

Fed. R. Civ. P 19(a).

indemnity claims against Lumbermens, and FIA remains a necessary party.  Alternatively, Lumbermens requests that the Court enter an Order directing FIA to be joined as Plaintiff, and if it will not be joined, that the case be dismissed.  If the case is not dismissed and FIA is not joined, Lumbermens further requests that the Court allow the Parties to engage in discovery and that the Motion to Dismiss "be carried pending the outcome of that discovery."  (Def.'s Reply at 3.)


A.   Legal Standard for Motion to Dismiss

In a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court "must accept as true the factual allegations in the complaint, and draw all reasonable inferences in favor of the plaintiff."  <u>Bolt Elec., Inc. v. City of New York</u>, 53 F.3d 465, 469 (2d Cir. 1995) (citations omitted).  "The district court should grant such a motion only if, after viewing plaintiff's allegations in this favorable light, it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  <u>Harris v. City of New York</u>, 186 F.3d 243, 247 (2d Cir. 1999).  A court's review of such a motion is limited and "the issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims."

Bernheim v. Litt, 79 F.3d 318, 321 (2d Cir. 1996). Dismissal is not warranted "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of [its] claim which would entitle [it] to relief." Cooper v. Park, 140 F.3d 433, 440 (2d Cir. 1998) (quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957)).

For purposes of a motion to dismiss, a complaint is deemed to include "any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference." Rothman v. Gregor, 220 F.3d 81, 88-89 (2d Cir. 2000) (citations omitted). However, if the allegations of a complaint are contradicted by documents incorporated in the complaint, the documents control and the court need not accept the allegations of the complaint as true. See Sazerac Co., Inc. v. Falk, 861 F.Supp. 253, 257 (S.D.N.Y. 1994) (citing Feik v. Fleener, 653 F.2d 69, 75 & n. 4 (2d Cir. 1981); see also Matusovsky v. Merrill Lynch, 186 F.Supp. 397, 400 (S.D.N.Y. 2002) ("allegations . . . contradicted by . . . a document [referenced in the complaint] are insufficient to defeat a motion to dismiss"); Rapoport v. Asia Elecs. Holding Co., Inc., 88 F.Supp. 2d 179, 184 (S.D.N.Y. 2000) (granting motion to dismiss where "documents [referenced but not attached to complaint] contradict Plaintiff's allegations.").

B.  Breach of Contract Claims

     "Contract remedies exist to give injured parties the benefit
of their bargain."  Capital Nat. Bank of New York v. McDonald's
Corp., 625 F.Supp. 874, 883 (S.D.N.Y. 1986) (citing County of
Suffolk v. Long Island Lighting Co., 728 F.2d 52, 63 (2d Cir.
1984); International Customs Associates, Inc. v. Ford Motor Co.,
893 F.Supp. 1251, 1255-56 (S.D.N.Y. 1995); Clalit Health Services
v. Israel Humanitarian Foundation, No. 02 Civ. 6552, 2003 WL
22251329, at *3 (S.D.N.Y. Sep. 30, 2003).  Only parties to a
contract have standing to assert a claim of breach of contract.
See Clalit, 2003 WL 22251329, at *3.  Without a contractual
relationship, there cannot be a contractual remedy.  Capital Nat.
Bank of New York, 625 F.Supp. at 883.

     Under New York law, a claim for breach of contract must
allege:  (1) the existence of a contract; (2) that the plaintiff
has performed his or her obligations under the contract; (3) that
the defendant failed to perform his or her obligations
thereunder; and (4) resulting damages to the plaintiff.  See W.B.
David & Co., Inc. v. DWA Communications, Inc., No. 02 Civ. 8479,
2004 WL 369147, at *2 (S.D.N.Y. Feb. 26, 2004); Global
Intellicom, Inc. v. Thomson Kernaghan & Co., No. 99 Civ. 342,

1999 WL 544708, at *18 (S.D.N.Y. July 27, 1999).[5]  "In pleading
these elements, a plaintiff must identify what provisions of the
contract were breached as a result of the acts at issue."  <u>Wolff
v. Rare Medium, Inc.</u>, 171 F.Supp. 2d 354, 358 (citing <u>Levy v.
Bessemer Trust Co., N.A.</u>, No. 97 Civ. 1785, 1997 WL 431079, at *5
(S.D.N.Y. July 30, 1997).  Pleading requirements under the
Federal Rules of Civil Procedure are construed liberally.
However, "[l]iberal construction has its limits, for the pleading
must at least set forth sufficient information for the court to
determine whether some recognized legal theory exists upon which
relief could be accorded the pleader.  If it fails to do so, a
motion under Rule 12(b)(6) will be granted."  <u>Id.</u>

     The Amended Complaint alleges that "Lumbermens' failure
and/or refusal to remit payment to AXA for Lumbermens [sic]
proportionate share of liability" under both Co-Surety #142 and
#146 "is without justification and constitutes a material breach
thereof."  (Am. Compl. ¶¶ 23, 26.)  AXA fails to allege any
particular provision of the Co-Sureties upon which it is basing

_____

[5] **AXA has stated that New York law should apply to its
breach of contract claims.  (Pl.'s Mem. Law at 9.)  Lumbermens
has not objected to AXA's choice-of-law analysis and has also
applied New York law to its analysis of the claims brought
against it in its Motion to Dismiss.  Such "implied consent . . .
is sufficient to establish choice of law."  <u>Motorola Credit Corp.
v. Uzan</u>, 388 F.3d 39, 61 (2d Cir. 2004) (citing <u>Krumme v.
Westpoint Stevens, Inc.</u>, 238 F.3d 133, 138 (2d Cir. 2000)).**

its breach of contract claims.  From the face of Co-Surety #142 and Co-Surety #146, (Alongi Aff. at Ex. C and E), there is nothing indicating any obligation of Lumbermens to FIA or AXA. The documents merely allocate portions of the Contract Amount between FIA and Lumbermens.  Indeed, nowhere in the Co-Sureties is there even a provision that makes AXA, or FIA, liable for Lumbermens' share of the surety.[6]

The Court cannot glean from the face of the Co-Sureties any language of contractual obligation on the part of either AXA (or FIA) or Lumbermens upon the non-performance by either party of its obligations.  It is insufficient for AXA to merely plead breach of contract in its Amended Complaint.  Such a claim cannot stand where, as here, the language in Co-Surety #142 and #146 precludes any breach of contract claim by AXA or FIA against Lumbermens.

The Court finds that AXA has failed to state a claim for breach of contract based on Co-Surety #142 or #146.  Accordingly, AXA's First and Second Causes of Action are DISMISSED with prejudice.

---

[6] Defendant Lumbermens submitted a purported Co-Surety Agreement for #146 (revised July 26, 1999) which again shows no obligation of Lumbermens directly to FIA (or AXA).

C.  Breach of Indemnity Claims

Where there is no express agreement creating a right to indemnification, an implied right of indemnification can be found.  See Fromer v. Vogel, 50 F.Supp. 2d 227, 240 (S.D.N.Y. 1999) (citing Trustee of Columbia University in the City of New York v. Mitchell/Giurgola Associates, 109 A.D.2d 449, 451-52 (1st Dep't 1985).  An implied right of indemnification may be based on the special nature of a contractual relationship between parties. People's Democratic Republic of Yemen v. Goodpasture, Inc., 782 F.2d 346, 351 (2d Cir. 1986).  Specifically, an implied right to indemnification may be based on an "implied contract theory" of indemnity, or an "implied in fact" indemnity."  Id.  This right "arises when '[a] person [], in whole or in part, has discharged a duty which is owed by him but which as between himself and another should have been discharged by the other, is entitled to indemnity.'"  Matter of Poling Transp. Corp., 784 F.Supp. 1045, 1048 (S.D.N.Y. 1992) (quoting McDermott v. City of New York, 50 N.Y.2d 211, 216-17 (1980).

Co-Sureties #142 and #146 do not contain any express agreement for indemnification and thus, a breach of indemnity claim can only be maintained if it is based on an implied right of indemnification theory.

Lumbermens has argued that AXA lacks standing to bring the

claims against Lumbermens because it is not a party to either Co-Surety #142 or #146. AXA disagrees and argues that it has standing to sue because AXA, and not FIA, was a party to Co-Sureties #142 and #146. In support of this, AXA points to the Amended Complaint, an invoice issued to "Colonia Insurance Company c/o FIA" by Universal on behalf of Lumbermans ("the Invoice"), (Alongi Aff. at Ex. F), a Power of Attorney Document which grants certain individuals power of attorney to conduct business on behalf of AXA, (Id. at Ex. A), and the Valenzuela and Eaton Bonds, incorporated by reference in the Co-Sureties. (Id. at Ex. B and D.)

As an initial matter, the Court notes that both AXA and Lumbermens have submitted affidavits and documents in support of their positions. However, in determining a motion to dismiss, the Court's review is limited to the Complaint, any written documents attached to the Complaint, and any statements or documents incorporated in the Complaint by reference.[7] Accordingly, the Court has not considered the affidavits and

---

[7] A court may consider affidavits and documents not incorporated in the Complaint on a motion to dismiss if that motion has been converted to one for summary judgment. See Fed. R. Civ. P. 12(b). However, a motion cannot be so converted unless parties have been given notice that the motion would be converted and given the opportunity to submit all materials pertinent to a summary judgment motion. See Sira v. Morton, 380 F.3d 57, 68 (2d Cir. 2004).

documents that are not referred to in the Amended Complaint. Co-Sureties #142 and #146, the Eaton and Valenzuela Bonds, and the Power of Attorney document are referred to in the Amended Complaint and can be considered by the Court.[8]

Paragraphs 10 and 13 of the Amended Complaint state that AXA, "by and through its agent and attorney-in-fact, FIA" entered into Co-Surety #142 and Co-Surety #146. According to AXA, the agency relationship between AXA and FIA is evidenced by the Power of Attorney document, annexed to Mr. Alongi's Affidavit, which appoints Patrick J. Lynch, Michael J. Tully, Eamonn T. Long and Philip S. Tobey as Attorneys-in-Fact for AXA. (Alongi Aff. at Ex. A.)

---

[8] **AXA claims that the agency relationship was also made known to Lumbermens by the Invoice issued by Universal, an insurer of Lumbermens, which was addressed to "Colonia Insurance Company c/o FIA," Colonia Insurance Company allegedly being the former name of AXA. (Along Aff. ¶ 2.) However, the Invoice, attached as Exhibit F to the Alongi Affidavit and Exhibit C of the Rohmann Affidavit, cannot be considered by the Court because no reference to it is made in the Amended Complaint.**

**Furthermore, AXA claims that the Co-Sureties, which were signed by FIA, and did not mention AXA, should have put Lumbermens on notice of the agency relationship because the Valenzuela and Eaton Bonds, allegedly incorporated by reference into the two Co-Sureties, listed AXA, with FIA acting as Attorney-in-Fact, as surety, and because the "Penal Amount" and "Contract Amount" in those Agreements equaled the penal amounts of the respective Bonds. However, the Co-Sureties have a Bond No. set out with no further reference to the Bond nor an explicit incorporation of its terms by reference.**

The Power of Attorney document does not list FIA as an entity appointed as Attorney-in-Fact by AXA.  Only Patrick J. Lynch, Michael J. Tully, Eamonn T. Long and Philip S. Tobey are listed in that document.  No one listed as an Attorney-in-Fact on the Power of Attorney document signed either Co-Surety #142 or #146.[9]

It is not clear to the Court how these documents demonstrate that Lumbermens was on notice that FIA was acting as agent and attorney-in-fact for AXA when it signed Co-Surety #142 or #146. FIA is not identified on either as an attorney-in-fact for AXA; indeed, AXA is not mentioned at all in those documents. Furthermore, FIA is not listed as an appointed agent and attorney-in-fact in the Power of Attorney document.  The Power of Attorney document lists four individuals, none of whom signed Co-Surety #146, and none of whom are identified on Co-Surety #142.

It is true that the Bonds for the Valenzuela Project and the Eaton Project list AXA Global Risks U.S. Insurance Company as Surety.[10]  The amount listed on the Bonds and corresponding Co-

_____

[9] As previously mentioned, the name of the person signing on behalf of FIA on Co-Surety #142 is not discernible, and there is no signature on behalf of FIA on Co-Surety #146.

[10] AXA points out that the address listed for AXA Global Risks on the Bonds, 119 Littleton Road, Parsippany, NJ 07054, is the same as the address for FIA, reflected on the Invoice to Colonia c/o FIA.  However, as stated previously, the Court is

Sureties is identical ($6,978,000 for Valenzuela Bonds and Co-Surety #142 and $8,933,000 for Eaton Bonds and Co-Surety #146). However, contrary to AXA's argument that the Valenzuela and Eaton Bonds, incorporated by reference into the Co-Sureties, demonstrate that Lumbermens knew of the FIA/AXA agency relationship, these Bonds actually support Lumbermen's argument that FIA entered into the Co-Sureties as the Lead Surety, and not as an agent for AXA. The Surety listed on the Bonds is AXA Global Risks U.S. Insurance Company. The representative of AXA on the Valenzuela Bonds is Eamonn T. Long, Attorney-in-Fact; on the Eaton Bonds, Patrick J. Lynch is designated as Attorney-in-Fact. FIA is not mentioned on any of these documents. The individuals who signed those Bonds were properly identified as Attorneys-in-Fact and were in fact individuals appointed Attorneys-in-Fact by the Power of Attorney document.

The only remaining support for AXA's allegation that FIA acted as its agent is the allegation in its Amended Complaint that "AXA, by and through its agent and attorney-in-fact, First Indemnity of America Insurance Company, entered into [Co-Surety #142 and #146]." However, because these allegations are directly

---

prohibited from considering the Invoice. Other than the Invoice, there are no other facts in the Complaint or incorporated documents that state that the address listed for AXA on the Bonds is actually the address for FIA.

contradicted by the written documents, the Court does not take these allegations as true, and the documents relied upon in the Amended Complaint control.  Therefore, the Court finds that no relationship has been alleged between AXA and Lumbermens which would give AXA standing to sue Lumbermens for breach of indemnity.  Despite AXA's attempts to plead an agency relationship between itself and FIA, the documents contradict these allegations.  Therefore, AXA lacks standing to bring breach of indemnity claims against Lumbermens.

Accordingly, Lumbermens' Motion to Dismiss Causes of Action Three and Four for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6) is GRANTED.


D.    Leave to Replead

Rule 15(a) of the Federal Rules of Civil Procedure requires that courts freely grant leave to amend "when justice so requires."  Fed. R. Civ. P. 15(a).  "[I]t is the usual practice upon granting a motion to dismiss to allow leave to replead." Cohen v. Citibank, No. 95 Civ. 4826, 1997 WL 88378, at *2 (S.D.N.Y. Feb. 28, 1997).  Absent a showing of undue delay, bad faith or dilatory motive on the part of the movant, undue prejudice to the opposing party, or the futility of the amendment, a plaintiff should be granted leave to replead.

See Protter v. Nathan's Famous Sys., Inc., 904 F.Supp. 101, 111 (E.D.N.Y. 1995) (citing Foman v. Davis, 371 U.S. 178, 182 (1962)).

If an amendment would be futile, courts can deny leave to amend.  See Oneida Indian Nation of N.Y. v. City of Sherrill, 337 F.3d 139, 168 (2d Cir. 2003) (citing Foman v. Davis, 371 U.S. 178, 182 (1962)).  "A proposed amendment to a pleading would be futile if it could not withstand a motion to dismiss pursuant to Rule 12(b)(6)."  Id. (citing Ricciuti v. N.Y.C. Transit Auth., 941 F.2d 119, 123 (2d Cir. 1991)).

Although the Court has found that AXA lacks standing to bring the breach of indemnity claims, and AXA has already had one bite at the apple, by submitting its Amended Complaint after Lumbermens moved to dismissed, "the Court cannot determine that the plaintiff could not, under any circumstances, sufficiently allege his claims."  Protter v. Nathan's Famous Sys., Inc., 904 F.Supp. 101, 111 (E.D.N.Y. 1995) (citing Foman v. Davis, 371 U.S. 178, 182 (1962)).  The Court recognizes that it may be possible for AXA to allege facts in a Second Amended Complaint that make out all the elements of a Breach of Implied Indemnity cause of action.

Accordingly, the Court GRANTS Lumbermens' Motion to Dismiss the Complaint.  The breach of contract claims against Lumbermens

are DISMISSED with prejudice.  However, the Court GRANTS AXA leave to file a Second Amended Complaint alleging breach of indemnity within twenty (20) days of the date of this Order. Failure to file within this time period shall be a waiver of the right to replead.  With regard to any amendment, Plaintiff is cautioned against perfunctory nonsubstantive or cosmetic changes, and against making conclusory allegations which are contradicted by written documents relied upon in the Second Amended Complaint. Lastly, AXA must be mindful of the constraints imposed by Fed. R. Civ. P. 11.

## III.  CONCLUSION

For the foregoing reasons, Defendant Lumbermens' Motion to Dismiss the claims against it is GRANTED.  Plaintiff AXA is GRANTED Leave to Replead the breach of indemnity claims.  AXA shall file the Second Amended Complaint within twenty (20) days of the date of this Order.

SO ORDERED.

Dated:    New York, New York
          July 13, 2005

<br>

*Deborah A. Batts*
DEBORAH A. BATTS
United States District Judge

21